## JONATHAN BOYCE v. THE AUDITOR GENERAL ET AL.

*Taxes—Validity—Record of board of supervisors—Signatures of chairman and clerk—Apportionment of State tax—Illegal appropriation of money—Record of township board —Special meeting—Constitutional law.*

1. The omission of the signatures of the chairman and clerk to the record of the proceedings of the board of supervisors may be supplied by them during their *then* term of office.

2. The record of the board of supervisors showed the amount of State tax apportioned to the county by the Auditor General, and of the county tax as determined by the board of supervisors, which latter tax was referred to a committee for apportionment among the several townships, but no reference was made for the apportionment of the State tax. The committee made two reports,—one of their apportionment of the county tax, and the other of a like apportionment of the State tax,—both of which reports were adopted by the board. The latter report, standing alone, was not sufficiently specific to show that it was an apportionment of the State tax, but such fact clearly appeared from both reports, which is held sufficient.

3. Where, in a suit involving the validity of a county tax, the

proofs fail to show conclusively that a donation by the board of supervisors to an agricultural society without the required statutory certificate was included in the sum ordered to be levied for county taxes, the validity of the levy cannot be attacked on account of such donation; distinguishing such a case from *Hall v. Kellogg*, 16 Mich. 135, where such fact appeared.

4. The illegal appropriation of money by a board of supervisors from the contingent fund at their January and July sessions will not affect the validity of a levy for county taxes made at their October session in the same year: citing *Wright v. Dunham*, 13 Mich. 414; *Iron Co. v. Crystal Falls Township*, 60 Id. 510.

5. The expenditure of moneys in payment of illegal and unauthorized salaries to county officers will not affect the validity of a county tax thereafter levied, in the absence of a showing of an appropriation by the board therefor, or that the county tax included any sum for such illegal purpose.

6. Whether a resolution "that there be levied on the taxable property of Roscommon county, for county purposes, a tax of one and one-quarter per cent. on the valuation of the several rolls of said county, making a total county tax of $11,091.52," is a sufficient determination by the board of supervisors, *quœre*; but, it not appearing that this was the only action or entry on their records upon the subject, the validity of the tax is not affected.

7. On the trial of a suit involving the validity of a township tax, an extract from the records of the township board was introduced in evidence, showing that $1,000 was ordered to be raised "for contingent expenses." The complainant's solicitor testified that he had examined the records, and had been unable to find any other resolution or vote to raise money for township purposes. He also called the town clerk as a witness, who testified to such examination by the solicitor, but that he (the witness) did not examine the records, and he was not interrogated any further on the subject. It appeared from the record of the annual township meeting that no sum was voted by the electors for township purposes. The certificate of the township clerk, filed by the supervisor of the township with the board of supervisors, was offered in evidence, and attached thereto was a paper referred to in the body of the certificate as a true copy of a resolution directing money to be raised, etc., which paper contained a sufficient recitation of such failure on the part of the electors. And it is held that the inability of the solicitor to find the original resolution on the records

cannot be allowed to prevail against such certified copy, and especially so in view of his failure to inquire further of the township clerk on the subject.

8. The failure of the township clerk to aggregate the several township taxes to be raised in his township in his certificate filed with the board of supervisors under section 23 of Act No. 195, Laws of 1889 (3 How. Stat. § 1170c2), is unimportant, if the several amounts are stated in the certificate.

9. In passing upon the validity of Act No. 376, Local Acts of 1889, which authorizes the township board of the township of Roscommon to borrow money upon the bonds of the township, to be expended in paying township orders outstanding at the time of the issuance of the bonds, the Court hold:

   a—That the consent of the electors was not essential to the exercise of the power conferred; citing *Callam v. Saginaw*, 50 Mich. 7; *Commissioners v. Rush*, 84 Id. 154.

   b—That the act is not mandatory, and does not legalize or undertake to pass upon the validity of the outstanding orders referred to, and was only intended to cover such orders as the township board should regard as valid.

10. The inability to pay orders drawn upon the contingent or highway fund of a township, because of its misappropriation, will not affect the validity of the orders so issued.

11. Proof of the service of notice of a special meeting of a township board is not required by statute to be recorded, but may be filed in the office of the township clerk, and, when so filed, constitutes a part of the records of that office, and may be resorted to to supply any omissions in the record of the proceedings of the board.

12. The fact that the record of a special meeting of a township board, at which one member was absent, fails to show that he was notified of the meeting, will not invalidate a tax authorized to be raised at said meeting, in the absence of proof that no notice was in fact given, or that actual proof of notice did not exist.

13. A board of supervisors ordered that a highway tax of one-half of one per cent. of the assessed valuation of a township be spread upon its assessment roll, without any certificate from the township clerk that any highway tax had been imposed by the township; which tax is held illegal, it not appearing that the amount of the highway tax for that year was fixed by the township board, or that the electors of the township either voted or failed to determine the amount to be raised for that purpose.

14. Section 9 of article 10 of the Constitution, authorizing boards of supervisors to raise money for constructing or repairing highways, relates to a county tax for the construction and improvement of State and Territorial roads; citing *Attorney General v. Supervisors*, 34 Mich. 47.

Appeal from Roscommon. (Aldrich, J.) Argued October 27, 1891. Decided February 19, 1892.

Bill to set aside taxes. Both parties appeal. Decree entered affirming the validity of all of the taxes except the highway tax, which is declared to be void. The facts are stated in the opinion.

*W. A. Burritt*, for complainant.

*Henry H. Woodruff*, for defendants.

McGRATH, J. This is a bill filed to have certain taxes levied upon the lands of complainant for the year 1889, and returned to the county treasurer as delinquent for the non-payment thereof, set aside, and the cloud created upon the title of the complainant to said lands by reason of said assessment and return removed.

The first point made by complainant is that the board of supervisors of Roscommon county did not, at their annual session for the year 1889, keep an official record, signed by the clerk and chairman of said board. No claim is made that the action of the board was not entered upon the record, or that the board took no such action as is recorded. It appears, too, that the record was afterwards, in February, 1890, and during the term for which the chairman and clerk had been elected, signed by said chairman and clerk. We think it was competent to supply this omission at the time. Dill. Mun. Corp. §§ 295, 296.

The second point raised is that the record of the proceedings of the board of supervisors contains no *data*

from which to ascertain that the amount of State tax apportioned to Roscommon township is the just amount that said township should pay. This objection is untenable. It does appear by the records that the amount apportioned by the Auditor General to Roscommon county was $2,889.93; that the amount of the county tax determined upon was $11,091.52; that the amount of the county tax apportioned to Roscommon township was $2,781.10, and the amount of the State tax was $724.88. A resolution was passed referring the apportionment of the county tax to a committee, but the record does not show that the apportionment of the State tax was referred; but it does, however, appear that the committee made two reports,—one with reference to the county tax, and the other respecting the State tax,—and that the board adopted both. *Boyce v. Sebring,* 66 Mich. 210; *Silsbee v. Stockle,* 44 Id. 561. The last-named report, standing alone, is not sufficiently explicit to show that it was an apportionment of the State tax, but, taken in connection with the first report, it is clear that it referred to the State tax.

It is next contended that the county tax is illegal, null, and void, for the reason that the board donated the sum of $300 to an agricultural society in the absence of the certificate required by How. Stat. § 2298; citing *Hall v. Kellogg,* 16 Mich. 135. In that case the proofs conclusively showed that the money for the society was included in the sum ordered to be levied, but in the present case there is no proof of the fact, and the contention cannot be sustained.

It is urged that in January, 1889, and again in July, 1889, the board of supervisors illegally appropriated certain moneys from the contingent fund for highway purposes. But these, if illegal, were mere misappropriations, and cannot affect the validity of a tax levied in October,

1889. *Wright v. Dunham,* 13 Mich. 414; *Peninsula Iron Co. v. Crystal Falls Township,* 60 Id. 510.

The next contention is that moneys were expended in payment of illegal and unauthorized salaries to county officers. There is no showing that an appropriation was made for this purpose by the board at any time, or that any sum for that purpose was included in the tax levy for the year 1889.

It is next urged—

"That it does not appear upon the face of the records of the proceedings of the board of supervisors that the money raised for county purposes was to defray the current expenses and charges of said county, and the necessary charges incident to or arising from the exercise of the lawful authority of said board of supervisors; and that said board did not ascertain and determine what amount of money, if any, necessarily should be raised for county purposes."

An extract from the records of the board was introduced, showing that by resolution the board determined—

"That there be levied on the taxable property of Roscommon county, for county purposes, a tax of one and one-quarter per cent. on the valuation of the several rolls of said county, making a total county tax of $11,091.52."

It is unnecessary to pass upon the question as to whether this constituted a sufficient determination and entry upon the records, for it does not affirmatively appear that this was the only action upon the subject or entry upon the records. In *Boyce v. Sebring,* 66 Mich. 210, CHAMPLIN, J., uses this language:

"The burden of proof is upon the party attacking a tax deed to show its illegality. The law declares that all taxes assessed upon any property in this State shall be presumed to be legally assessed, until the contrary affirmatively appears. This affirmative showing may, and often does, in these cases, involve the production by the attacking party of negative proof; and it was incumbent upon

the plaintiff in this case, in order to overthrow the presumption of the legality of the amount levied for township purposes, to introduce the township records to show that the amount which the supervisor levied for township purposes was unauthorized. *Robbins v. Barron*, 33 Mich. 124; *Upton v. Kennedy*, 36 Id. 215; *Hunt v. Chapin*, 42 Id. 24."

It is next urged—

"That the township contingent and highway tax is void, for the reason that the electors did not grant and vote the money for contingent purposes under section 671, How. Stat., and under sections 3 and 4 of Act No. 58, Pub. Acts 1885, for highway purposes, and that the records do not show that said township board had jurisdiction to act in the matter of voting money for said purposes, in that said records do not show the failure of the electors to grant and vote said sums of money at the annual township meeting."

In support of this contention, an extract from the record is introduced, showing that at a meeting of the town board held August 26, 1889, a resolution was adopted providing for the raising of "one thousand dollars for contingent expenses for this year." Complainant's solicitor was sworn, and testified that he had searched the records, and "had been unable to find any other resolution or vote to raise money for township purposes, except the one read in evidence." The record of the annual meeting was offered, showing that no sum was voted for township purposes. The clerk's certificate, signed by him, and presented to the supervisor, and by the latter to the board of supervisors, appears in evidence, and attached thereto is the following:

"Township board met at the clerk's office August 26, 1889. Full board present.

"*Resolved* by the town board, now in session, that, as the annual township meeting did not or neglected to raise or vote any money for township purposes to pay outstanding indebtedness, be it hereby authorized by said board that, according to law, we raise $800 to pay town-

ship indebtedness now outstanding; also $1,000 for contingent expenses for the coming year.

"And it is hereby agreed by said board that the supervisor shall assess the said amount, the treasurer to collect all of it, or so much as can be got, under Local Act No. 225 of the Session Laws of the year 1889; also money to be raised for school-district No. 1, $300, and for school-district No. 3, $300."

In the body of the certificate, which is signed by the clerk, this attached paper is referred to as a true copy of a resolution directing money to be raised, etc. It is not signed by the clerk, but is attached to and referred to in a certificate which is signed by the clerk, and is a paper required by law to be made, presented to the board, and filed in the office of the county clerk. It is upon it that the board acts. The clerk who signed it was called by complainant, and examined at length as to other matters, but he is not asked a question relative to this action of the township board, or as to where in the record the original of such resolution is to be found. He is questioned as follows:

"Q. Do you remember of looking at the record of the proceedings of the township board for the year 1889, at my request, for the purpose of ascertaining whether or not the sum of money had been raised by the board for highway purposes?

"A. No, sir; I recollect your looking it over, but I didn't look it over.

"Q. You didn't, then, examine the record?

"A. No, sir."

The mere inability of complainant's solicitor to find the resolution upon the record cannot be allowed to prevail against a paper certified under the law as a true copy of a portion of the record, especially in view of the failure to pursue the inquiry under the circumstances given. This resolution contained a sufficient reci-

90 Mich.—21.

tation of the failure of the electors at the annual meeting to vote any sum for township purposes.

The next complaint is that the clerk's certificate is insufficient. Section 23 of the tax law (Act No. 195, Laws of 1889) provides that—

"It shall be the duty of the township clerk of each township, on or before the first day of October of each year, to make and deliver to the supervisor of his township a certified copy of all statements and certificates on file, and of all records of any vote or resolution, in his office, authorizing or directing moneys to be raised therein by taxation for township, school, highway, drain, and all other purposes, together with a statement of the aggregate amount thereof, and such certified copies shall by such supervisor be delivered to the clerk of the board of supervisors," etc.

The certificate made and delivered in this instance was as follows:

"I hereby certify that the annexed are true copies of all statements and certificates on file, and of all records and votes and resolutions, in my office, authorizing or directing moneys to be raised in the township of Roscommon by taxation for township, school, highway, drain, and all other purposes, and that the aggregate amount of said moneys is as follows:

| | |
|---|---|
| Township tax | $1,000 |
| For outstanding indebtedness | 800 |
| School tax, Dist. No. 1 | 300 |
| Dist. No. 3 | 300." |

Attached to this certificate were the resolutions, etc. The certificate fails only in that it does not aggregate the several township taxes. But the items are given; hence the purpose for which it is given is served.

It is next urged that the tax levied to pay outstanding indebtedness is void, for the reason that the law authorizing the issue of certain bonds representing this indebtedness is unconstitutional and void.

Act No. 376, Local Acts of 1889, authorized the town-

ship board to borrow a sum not exceeding $4,000, and to execute the bonds of the township therefor. Section 2 of the act provides that—

"Any money borrowed under the provisions of this act shall be expended in paying outstanding orders of said township only, at the time said bonds shall be issued."

Section 3 makes it the duty of the supervisor to assess each year a sum sufficient to pay accruing interest and any installment of principal falling due.

1. The consent of the electors was not essential to the exercise of the power conferred. *Callam v. Saginaw*, 50 Mich. 7; *Commissioners v. Rush*, 84 Id. 154.

2. The act is not mandatory, and does not legalize or undertake to pass upon the validity of the outstanding orders referred to. The general statute empowers the township board to audit and settle claims against the township. How. Stat. § 746. In general, the presentation to the board of a claim against the township confers jurisdiction to decide whether the claim is a valid township charge or not. *Wall v. Trumbull*, 16 Mich. 228. The act cannot be regarded as intended to include all orders, irrespective of their validity, but such only as the township board should regard as valid.

3. These bonds were issued to pay an accumulation of outstanding highway and contingent orders which had been issued during a period which the record leaves uncertain. The statute, § 1450, prohibits the issue of highway orders in excess of the highway funds authorized by vote or otherwise provided by law, and the issue of orders upon the contingent fund in excess of the provision therefor is unlawful. It does not follow, however, that, because these orders were not paid, they were illegally issued. It does not appear what moneys were raised for these purposes for the years when these orders were issued, or that the money so raised was applied to

the purposes for which raised. Nor does it appear that the contingent fund was exhausted when the orders upon that fund were issued. If moneys raised for highway purposes, or moneys in the contingent fund which should have been applied to the payment of orders drawn upon that fund, were misappropriated, the inability to pay because of such misappropriation would not affect the validity of the orders so issued.

4. It is objected that the record shows that at the special meeting at which the bond to pay which this levy was made was issued one member of the township board was absent, and that the record does not show that the absent member was notified of the meeting.

It was held in *Township Board of Beaver Creek v. Hastings,* 52 Mich. 528, that—

"No meeting of the township board could be legal which was not attended by all the members, unless it appeared that the meeting was duly called and notified. The mere attendance of a quorum does not make a legal meeting, but every member has a right to be present and participate in its action."

That was an application for a *mandamus* to compel a township clerk to enter upon the records the proceedings of an alleged meeting of the township board. The answer set up that no notice of the meeting had been given, and that a member was absent. The statute does not prescribe what notice, or how notice, shall be given. It makes no provision for the recording of papers filed in the office of the township clerk regarding business of this nature. It does provide that all papers filed in the office of the township clerk relative to laying out, altering, or discontinuing highways shall be recorded. Proof of notice in such proceedings is made a matter of record. Unless required by statute, proof of notice is not usually recorded, but is filed away, and, when so filed in a public office, such proof constitutes a part of the records of

that office, and may be resorted to to supply any omissions in the record. The township clerk is the clerk of the township board. His office is the depository of the township papers and records. It is in his office that certain papers are required to be filed. His office is a public office.

In *Township of Taymouth v. Koehler*, 35 Mich. 22, 25, the Court say:

" While there should be proper written evidence on file or of record showing that the requisite statutory preliminary requirements to a legal meeting had been complied with, and showing that such a meeting had been held, and the proceedings thereof, courts should bear in mind that, either from a lack of experience or otherwise, it frequently happens that the persons whose duty it is to give notice of, and keep a record of, such meetings, fail to keep the files and records of their office in a clear and intelligible manner, and that to require the utmost strictness in this respect would result in many cases in rendering void the proceedings of such *quasi* corporations. Their proceedings, therefore, should be liberally construed, and all proper intendments made in favor of their regularity. Cooley, Tax'n, 246, 247."

In the present case it is not claimed that no notice was given, and there was no attempt to show that actual proof of notice did not exist.

It is further contended that a highway tax of one-half of 1 per cent. of the assessed valuation was ordered spread upon the roll of the township of Roscommon by the board of supervisors, whereas no highway tax was certified as having been imposed by the township. It does not appear that the amount of the highway tax was fixed by the township board, nor that the township either voted or failed to determine the amount to be raised for this purpose. The board of supervisors have no authority to determine the amount of a tax upon a township for township purposes. The constitutional provision (section

9 of article 10) authorizing the raising of taxes for constructing or repairing highways relates to a county tax for that purpose, and then only for the construction and improvement of State and Territorial roads. *Attorney General v. Supervisors,* 34 Mich. 47. The highway tax levy is therefore invalid.

The court below found the State tax, the township tax, the special township tax to pay indebtedness, and the highway tax invalid, and the county tax and school tax valid, and both parties have appealed. A decree will be entered affirming the validity of all of said taxes, except the highway tax, and declaring the said highway tax to be null and void, with costs of this Court to defendants.

MORSE and LONG, JJ., concurred. CHAMPLIN, C. J., and GRANT, J., did not sit.