AUDITOR GENERAL *v.* GRIFFIN.

140   427
147  ¹332

1. TAXATION—SALE—PETITION—PRIOR PROCEEDINGS—IRREGULARI-
   TIES—LIEN OF STATE—ENFORCEMENT.

   The fact that irregularities may be discovered in proceedings
   antedating a petition for the sale of land for taxes is no ob-
   stacle to enforcing the State's lien for a tax equitably due,
   and chargeable to the land sought to be subjected to the lien,
   provided there is enough in the proceedings to show that the
   levy of the tax is authorized.

2. SAME—BOARD OF SUPERVISORS—CERTIFICATE OF EQUALIZATION
   —CLERK'S SIGNATURE.

   Where the record of the board of supervisors shows that the as-
   sessments of the various assessing districts were properly
   equalized and the taxes properly apportioned, the fact that
   the certificate of equalization attached to the various tax
   rolls was not signed by the clerk of the board, but by the
   chairman alone, does not affect the taxpayer's equitable obli-
   gation to pay the tax.

3. SAME—EQUALIZATION—UNIT—BAY CITIES.

   In each of the cases of Bay City and West Bay City the assess-
   ment is made by one central board, the roll being spoken of
   in the singular, though divided into parts or books showing
   the property assessed in each ward, and the charter in each case
   treats the several component parts or books as comprising a
   single assessment. *Held*, that the board of supervisors of
   Bay county is authorized to treat the city as a unit in each
   case in making an equalization.

4. SAME—STATE TAX COMMISSION—ACTS OF—NECESSITY OF ADDI-
   TIONAL EQUALIZATION.

   The board of supervisors is not bound by the figures of the
   State tax commission, and where, in a State equalization
   year, an equalization made in July was regular, it was not in-
   validated so as to require an additional equalization in Octo-
   ber by the subsequent action of the State tax commission in
   increasing the assessment rolls of some of the assessment dis-
   tricts.

5. SAME—MINISTERIAL DUTY—ERROR—EFFECT.

> Where a board of supervisors made a determination of the aggregate real and personal assessment in October, but, in making up its figures, used the assessments of personal property as they appeared on the original rolls, without taking into account the amounts added to certain townships and wards by the State tax commission, there was a mere mistake in performing a ministerial duty, and there being no evidence of fraudulent purpose, the vote not being divided on the question, and the representatives of townships injuriously affected by the error voting with those benefited thereby for the apportionment as made, taxpayers to whom no injury resulted could not complain.

Appeal from Bay; Shepard, J.   Submitted February 16, 1905.   (Docket No. 82.)   Decided June 8, 1905.

Petition by Perry F. Powers, auditor general, for the sale of land delinquent for taxes:   On objections filed by Albert A. Griffin and another.   From a decree for contestants, petitioner appeals.   Reversed.

*Brakie J. Orr*, Prosecuting Attorney (*S. G. Houghton*, of counsel), for petitioner.

*Albert McClatchey* (*C. L. Collins* and *T. E. Webster*, of counsel), for contestant Griffin.

MONTGOMERY, J.   On the presentation of the usual petition for the sale of land in the county of Bay, certain owners of land objected to decrees against their lands for taxes; various grounds of objection being argued, and numerous alleged errors in the proceedings antedating the auditor general's petition being urged.

Before discussing such of these as affect the vital question—i. e., whether these lands are subject to the assessment made—it is proper to reiterate what we have held in numerous cases:   In these proceedings the fact that irregularities may be discovered in the proceedings furnishes no obstacle to enforcing the State's lien for a tax equitably due to the State, and chargeable to the land sought to be

subjected to State lien, provided that there is enough in the proceedings to show that the levy of said tax is authorized. See *Auditor General* v. *Sparrow*, 116 Mich. 585, 588, 589, where the radical difference between the present tax law and former statutes in which a sale preceded any judicial determination is fully pointed out by Mr. Justice HOOKER. In that case it was held that the absence of a warrant from a tax roll furnishes no defense to these proceedings, in view of the provisions of section 99 of the tax law (1 Comp. Laws, § 3922). See, also, *Auditor General* v. *Hutchinson*, 113 Mich. 245; *Shelden* v. *Township of Marion*, 101 Mich. 256.

One of the complaints made is that the certificate of equalization attached to the various tax rolls was not signed by the clerk of the board of supervisors, but was signed by the chairman alone. If the record of the board of supervisors shows that the assessments of the various assessing districts were properly equalized and the taxes were properly apportioned, it is not seen how the omission of this formality affects the equitable obligation of these contestants to pay this tax. It is contended, however, that there was no proper equalization. This was the year of the State equalization, and an attempted equalization was made in July. If regular, and if said equalization stands unaffected by the subsequent action of the State tax commission—a question which will be later discussed—the necessity for an additional equalization at the October session is obviated. Act No. 361, Local Acts of 1897; *Silsbee* v. *Stockle*, 44 Mich. 565; *Boyce* v. *Sebring*, 66 Mich. 210.

The contestants claim that this equalization in July was invalid, for the reason that the cities of Bay City and West Bay City were each treated as the unit for equalization, whereas (it is contended), the equalization should have been by wards and townships; citing, in support of this claim, *Messenger* v. *Peter*, 129 Mich. 93. In that case it was held that the statute which requires the board to examine the assessment rolls of the several townships,

wards, or cities, and ascertain the relative valuation of the real estate, etc., should be construed as intending that the assessment district be treated as the unit. In each of the cases of Bay City and West Bay City the assessment of the entire city is made by one central board. The roll' is spoken of in the singular, although divided into parts or books showing the property assessed in each ward. The charter in each case treats the several component parts or books as comprising a single assessment. The board was authorized to treat the city as a unit in each case.

It is insisted, however, that the case of *Silsbee* v. *Stockle* should not rule this case, for the reason that the State tax commission, after the July equalization, and prior to the October session, made certain additions to the assessment rolls of some of the assessment districts, and that it is not to be presumed that the board, with information of this action before it, would have fixed the same figures in October. These changes in the assessments might, it is true, have challenged the attention of the supervisors to the subject, but the board was in no way bound by the figures of the State tax commission in making its equalization. The board rested content with its July action— in fact, affirmed it in a way claimed by contestants to be informal. It is enough, within the rule of *Silsbee* v. *Stockle*, that it was allowed to stand.

Another objection interposed was that taxable property to the amount of $1,098,105 had been added to the assessment rolls of certain townships and Bay City and West Bay City, and that these added assessments were not taken into account in making the apportionment of taxes. Section 3860, 1 Comp. Laws, contemplates a computation of the personal assessments in October, and that the apportionment shall be made on the basis of the aggregate real and personal assessment as determined by the board. This determination was made in October, but the board, in making up its figures, used the assessments of personal property as they appeared on the original rolls. This was a mistake in the performance of a ministerial duty. *Fay*

*v. Wood*, 65 Mich. 390, 398. We find no evidence of any fraudulent purpose. The vote was not divided upon the question, the representatives of townships injuriously affected by the error voting with those benefited thereby for the apportionment as made.

To the extent to which contestants' taxes have been increased by reason of this error, it would seem that they may have their tax abated under section 76 of the tax law (1 Comp. Laws, § 3899). It is equally clear that where no injury resulted, as in Bay City, the contestants are not in a position to complain.

The decree is reversed, and a decree will be entered in accordance with this opinion.

CARPENTER, BLAIR, OSTRANDER, and HOOKER, JJ., concurred.